1

PATRICK ROY HARPER
PRO SE
6690 BLOOMFIELD RD
PETALUMA, CA 94952
TEL.:(707)751-6677
MYCASEMARIN@OUTLOOK.COM



FILED

JAN 22 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Seaman's case, Collect Clerk's
fee before termination pursuant
to 28 USC 1916.

**CV25    0758** AGT

**PATRICK ROY HARPER,**

**PLAINTIFF,**

**VS.**

**COUNTY OF MARIN,**

**CALIFORNIA DEPARTMENT**

**OF FISH AND WILDLIFE,**

**DEFENDANTS,**

**COMPLAINT FOR VIOLATIONS OF:**

**1) SHERMAN ACT, 15 U.S.C. § 1**

**2) SHERMAN ACT, 15 U.S.C. § 2**

**3)  CLAYTON ACT SECTION 4 (15 U.S.C. § 15), SECTION 15 (15 U.S.C. § 15), SECTION 16 (15 U.S.C. § 16)**

**4) TORTIOUS INTERFERENCE WITH FEDERAL ADMIRALTY CONTRACTS**

**ADMIRALTY BENCH TRIAL DEMANDED**

# Federal Admiralty Jurisdiction

PAGE1

PLEADING TITLE   PLAINTIFF'S COMPLAINT

1.)   The District Court has jurisdiction under *28 U.S.C. § 1333*, which grants Federal jurisdiction over civil cases arising under Admiralty and Maritime law. The Plaintiff, as a Seaman, initiates this action based on the Defendants' antitrust violations, which have directly impacted the Plaintiff's employment and professional activities as the Captain, Owner, and Operator of the Federally Documented Commercial Fishing Vessel MARIAN (250759). These unlawful practices have significantly disrupted the Plaintiff's lawful Fishing operations, undermining his ability to conduct business within the Commercial Fishing Industry. These issues fall squarely within the scope of Admiralty jurisdiction as they affect the Maritime Industry, including the Plaintiff's working conditions as a Seaman.

## Statutory Right to Bring Suit

2.)   As a Seaman, the Plaintiff has the statutory right to bring this civil action in Federal Court under *28 U.S.C. § 1916*, which authorizes a Seaman to seek legal recourse for violations of Federal law through Admiralty jurisdiction. The Plaintiff's claims, including violations of Federal antitrust law under the *Sherman Act Section 1 (15 U.S.C. § 1) and Sherman Act Section 2 (15 U.S.C. § 2)*, involve conduct that

PAGE2

PLEADING TITLE  PLAINTIFFS COMPLAINT

affects the Maritime Industry and the Plaintiff's employment as a Seaman. This provides the necessary statutory basis for bringing this action in Admiralty.

## Antitrust Violations in the Maritime Industry

3.)    The Plaintiff asserts that the Defendants' have engaged in unlawful antitrust practices, and conduct that disrupts the Commercial Fishing Industry. These practices directly impact the Plaintiff's ability to work as a Seaman and interfere with the operation of Vessels engaged in Interstate Commerce. Such violations give rise to Federal antitrust claims under the Sherman Act and are actionable within the context of Admiralty law, providing the Plaintiff the right to bring this action under *28 U.S.C. § 1916.*

## Expedited Review and Special Protections for Seamen

4.)   In light of the Plaintiff's status as a Seaman, the Court is urged to expedite the proceedings as is customary under Admiralty law. Seaman is considered "ward of the court", and his claim must be handled expeditiously due to the unique circumstances of his employment and the vulnerabilities he faces. The expedited review of

PAGE3

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Seaman's claims is especially important in this case, as the anti-competitive practices at issue directly impact the Plaintiff's ability to work and earn a living.

5.)   Therefore, this Court has Federal question jurisdiction under *28 U.S.C. § 1331*, Admiralty jurisdiction under *28 U.S.C. § 1333*, and jurisdiction to hear the Plaintiff's claims pursuant to *28 U.S.C. § 1916*, which grants the Plaintiff, as a Seaman, the right to bring this action under Admiralty jurisdiction. The Plaintiff respectfully requests that the Court consider the special protections afforded to Seaman, including the expedited review of these claims.

## Description of the Parties

PAGE4

PLEADING TITLE   PLAINTIFF'S COMPLAINT

6.)   The Plaintiff, PATRICK ROY HARPER a Commercial Fisherman and Commercial Fishing Vessel Owner and Captain whose place of business is the Pacific Ocean. Plaintiff operates and since 2011 has owned and operated the Commercial Fishing Vessel MARIAN Federal Documentation number 250759. Plaintiff's business has at all times been capable of selling at wholesale a large volume of product.

7.)   The Defendants', local California Charter County of Marin, and California Department of Fish and Wildlife.

## INTRODUCTORY STATEMENT

8.)  Plaintiff, PATRICK ROY HARPER, is a lawful Commercial Fisherman operating a Federally Documented Fishing Vessel under Federally authorized contracts with the U.S. Coast Guard (USCG), the National Oceanic and Atmospheric Administration (NOAA), and other Federal agencies, pursuant to Federal laws including Admiralty law, the National Marine Sanctuaries Act (NMSA), and other relevant statutes regulating Federal Fisheries and Maritime Commerce. Plaintiff's

PLEADING TITLE   PLAINTIFF'S COMPLAINT

business is engaged in Interstate and International Commerce, under explicit Federal regulation and contractual obligations.

9.)    The Defendants', local California Charter County of Marin, and California Department of Fish and Wildlife, have intentionally and unlawfully interfered with Plaintiff's Federally authorized operations, obstructed the Federal government's Constitutional and contractual obligations, and caused a direct and unlawful restraint of trade and Commerce, in violation of Federal law, including the *Sherman Antitrust Act (15 U.S.C. § 1 et seq.), the Clayton Act (15 U.S.C. § 12 et seq.)*, tortious interference with a Maritime contract and the U.S. Constitution. The purpose of this action is to recover damages against the above-named Defendants for injuring Plaintiff PATRICK ROY HARPER in his business of Commercial Fishing F/V MARIAN 250759, which injury proximately resulted from Defendants' violation of the antitrust laws of the United States, and to restrain and enjoin the Defendants from continuing the illegal monopoly and the combination, conspiracies and contracts in restraint of Plaintiff's trade and Commerce in his business also with the United States Federal Government, under Federal Government contracts, within exclusive Federal

PAGE6

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Admiralty Jurisdiction. These actions have resulted in damages to Plaintiff's business in the amount to be determined by bench trial.

10.)  This complaint addresses the Defendants' unlawful interference with Federal Commerce, specifically how the Defendants' actions have obstructed the Federal Government's ability to fulfill its contractual obligations with the Plaintiff, and how these actions have unlawfully restrained trade and Commerce by preventing the Plaintiff from operating under Federally authorized contracts within Federally regulated waters.

# FACTUAL ALLEGATIONS

11.)  Plaintiff's Business and Federal Contracts: Plaintiff is a Commercial Fisherman, Captain/Owner/Operator engaged in lawful activities under Federal contracts with United States Department of Homeland Security's (DHS) United States Coast Guard (USCG) and the United States Department of Commerce through the National Oceanic Atmospheric Administration. These contracts are executed under the

PAGE7

PLEADING TITLE   PLAINTIFF'S COMPLAINT

authority of the Federal Government's Federally regulated waters, including those designated under the National Marine Sanctuaries Act (NMSA). These contracts are essential for Plaintiff to lawfully conduct Fishing operations subject to Federal regulation. The Defendants' have intentionally and unlawfully obstructed the Plaintiff's ability to operate in Federally regulated waters by imposing unreasonable, discriminatory, and conflicting state regulations that directly interfere and conflict with Federal law and intentionally interfere with the Plaintiff's contractual obligations with the Federal Government. Specifically, the Defendants' have willfully exceeded their Constitutional authority, intentionally obstructing a federal objective that lies within the exclusive domain of the Federal Government. This conduct has specifically interfered with the Federal Government's ability to fulfill its contractual requirements, which involve the Plaintiff's Commercial Fishing Vessel F/V MARIAN 250759.

12.)   On November 18, 2022, Plaintiff was unlawfully arrested at his father's residence without probable cause and without a valid arrest warrant. This arrest was carried out by Defendants as part of an intentional and unlawful scheme to interfere with Plaintiff's business operations and federally protected Admiralty contracts. The arrest was initiated without legal justification and was executed with the intent to

PAGE8

PLEADING TITLE   PLAINTIFF'S COMPLAINT

disrupt Plaintiff's ability to engage in commerce and obstruct his contractual obligations within Federal jurisdiction.

13.)  As a direct result of this unlawful arrest, Plaintiff was subjected to malicious prosecution, where legal proceedings were initiated and continued without probable cause, in bad faith, and with the intent to harm Plaintiff's business and Federal contracts. These proceedings were part of a broader scheme to restrain trade, eliminate competition, and monopolize Plaintiff's business opportunities in violation of the Sherman Act, Sections 1 and 2. The malicious prosecution was aimed at causing economic harm, and interfering with Plaintiff's business operations, all of which were subject to Admiralty law and Federal jurisdiction.

(1.03 County Powers) Article XI of the California State Constitution authorizes a county to make and enforce local ordinances that do not conflict with general laws. Among other authorities, a county has the power to sue and be sued, purchase and hold land, manage or dispose of its properties, and levy and collect taxes authorized by law.

PAGE9

PLEADING TITLE  PLAINTIFF'S COMPLAINT

14.)   The actions of Defendants, including the unlawful arrest and continuation of baseless legal proceedings, constitute tortious interference with Plaintiff's business relationships and federally protected admiralty contracts. These actions were intentionally designed to harm Plaintiff's ability to operate freely in the marketplace, causing substantial economic injury and undermining Plaintiff's federally protected rights. Such conduct interfered with Plaintiff's lawful business activities and contracts governed by exclusive Federal Admiralty jurisdiction.

**Ongoing Court Proceedings and Economic Harm:**

15.)   Following the unlawful arrest, Plaintiff was subjected to continuous court appearances and proceedings between November 18, 2022, and September 6, 2023, spanning nearly a full year. These ongoing proceedings, which involved multiple in-person appearances in court on the following dates: November 18, 2022, November 21, 2022, November 30, 2022, December 14, 2022, December 15, 2022, December 16, 2022, December 19, 2022, December 20, 2022, January 9, 2023, January 13, 2023, February 21, 2023, April 19, 2023, April 24, 2023, May 1, 2023, May 8, 2023, June 5, 2023, June 21, 2023, July 13, 2023, July 19, 2023, August 17, 2023, August 28, 2023, August 30, 2023, and September 6, 2023, have caused severe financial and personal harm to Plaintiff. The constant need to appear in court has destroyed

PAGE10

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Plaintiff's business, interfered with Plaintiff's ability to engage in commerce, and substantially restrained trade, resulting in a significant economic and reputational injury.

## Violation of Federal Admiralty Rights and Jurisdiction:

16.)   Plaintiff's rights were further violated as Defendants' actions have interfered with Plaintiff's federally protected Admiralty rights within the exclusive jurisdiction of Federal courts. Plaintiff operates under contracts governed by Federal Admiralty law, and Defendants' conduct, particularly through wrongful and continued prosecution, has obstructed and undermined the Federal Government's ability to fulfill its Constitutionally required obligation under federally protected contracts, which the Plaintiff has attached with this complaint. The Defendants' actions and state court's involvement in a matter that falls within Federal jurisdiction constitutes a violation of Federal law and interferes with the Federal Government's exclusive domain over Admiralty contracts and jurisdiction. Defendants acted in concert and collusion, engaging in a conspiracy under contract to deprive Plaintiff of his constitutional admiralty rights. This is a restraint of trade and commerce, and interference with Plaintiff's ability to conduct lawful business. Defendants' actions

PAGE11

PLEADING TITLE   PLAINTIFF'S COMPLAINT

are part of a coordinated effort to harm Plaintiff and prevent him from operating in the Commercial Fishing Industry. This conspiracy not only constitutes a violation of Plaintiff's Federal Admiralty rights but also demonstrates an unlawful and malicious intent to interfere with Plaintiff's livelihood and Federal rights.

## Tortious Interference with Business and Federal Admiralty Contracts Under Federal Admiralty Law:

17.)   The actions of Defendants, particularly through the prolonged and unlawful legal proceedings, amount to tortious interference with Plaintiff's business relationships and federally protected contracts. Defendants intentionally and maliciously interfered with Plaintiff's contracts, causing harm to Plaintiff's business operations and causing substantial economic damages. These actions were designed to harm Plaintiff's business, eliminate competition, and prevent Plaintiff from fulfilling his obligations under federal contracts.

Violation of Antitrust Laws – Sherman Act and Clayton Act

18.)   The unlawful prosecution, combined with Defendants' interference in Plaintiff's business, constitutes a restraint of trade in violation of Section 1 of the Sherman Act.

PAGE12

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Defendants' actions unreasonably restrained Plaintiff's ability to engage in commerce, harmed competition, and directly harmed Plaintiff's business. Furthermore, Defendants' actions are an attempt to monopolize and eliminate competition, violating Section 2 of the Sherman Act. In addition, under Section 4 of the Clayton Act, Plaintiff is entitled to seek damages for the harm caused by these unlawful actions. The actions of Defendants constitute tortious interference with a federally protected contract and unlawful obstruction of Plaintiff's ability to engage in lawful business operations, warranting both compensatory and punitive damages.

19.)  By obstructing these federal objectives and Federal Admiralty contracts, the Defendants' have intentionally restrained trade and Commerce, in direct violation of the *Sherman Act, Sections 1 and 2, as well as the Clayton Act*. These continued and ongoing unlawful actions have caused in excess of the total destruction of the Plaintiff's Commercial Fishing business, and the Plaintiff continues to suffer ongoing and irreparable harm due to the Defendants' conduct. Absent immediate judicial intervention, the Plaintiff's ability to operate its business in Federally regulated waters will be permanently and irreparably impaired.

PAGE13

PLEADING TITLE   PLAINTIFF'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

20.)   The Defendants', acting in concert pursuant to a conspiracy, under contract which is attached to this complaint have deliberately coordinated their actions to obstruct the Plaintiff's Federal contracts and, by extension, disrupt the Plaintiff's ability to engage in lawful Commercial Fishing. These actions are not only discriminatory and unreasonable, but they are also designed to obstruct the Plaintiff's business operations and undermine the Federal Government's fulfillment of its obligations to the Plaintiff under Federal law.

21.)   The coordinated conduct of the Defendants', which includes actions such as meetings, communications, contracts, prosecution, perjury, falsified submissions of evidence, forgery, and the collection of criminal restitution under the guise of being victims of a crime which never occurred, and other concerted efforts, reflects a clear intent to interfere with the Plaintiff's contractual relations with the Federal Government. The Defendants' actions are a direct and intentional restraint of trade, in violation of *Section 1 of the Sherman Act*, as they have artificially restricted the Plaintiff's ability to operate in the Commercial Fishing Industry, causing severe market distortions and harm to competition. Furthermore, this conduct constitutes an

PAGE14

PLEADING TITLE   PLAINTIFF'S COMPLAINT

attempt to monopolize or has resulted in the monopolization of the relevant market in violation of *Section 2 of the Sherman Act*.

22.)   The relevant market impacted by this conspiracy is the Commercial Fishing Industry within Federally regulated waters, an area where the Defendants' actions have reduced competition. This unlawful interference has drained the Plaintiff out of business, reducing consumer choice and causing extensive harm to the Plaintiff's operations, including the loss of contracts, revenue, and business goodwill.

## Plaintiff's Injury and Actual Loss

23.)   Plaintiff has suffered substantial economic harm as a result of the Defendants' conduct. Specifically, the Defendants' actions have caused an antitrust injury, which is to say, injury of the type the antitrust laws were intended to prevent and that flows from the unlawful conduct of the Defendants. As the Supreme Court stated in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977),* "plaintiffs must

PAGE15

PLEADING TITLE   PLAINTIFF'S COMPLAINT

prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."

24.)   The Defendants' unlawful actions have restrained Plaintiff's ability to operate in the Commercial Fishing industry and have resulted in the destruction of Plaintiff's business, causing the loss of significant income and key business relationships directly resulting from the conspiracy and contracts between the Defendants named in this complaint, as detailed in the attached Exhibit A, Exhibit B, Exhibit C. The attached evidence constitutes concrete proof of an antitrust injury, which is to say, injury of the type the antitrust laws were intended to prevent and that flows from that which makes Defendants' acts unlawful.

25.)   Furthermore, the Court in *Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977),* held that the injury must be the "direct result" of the illegal conduct. Here, the Plaintiff's direct injury flows from the Defendants' unlawful conduct, which includes conspiring in collusion and under contract to intentionally obstruct Federal objectives and Federal law within the exclusive domain of the Federal Government. Specifically, the Defendants' actions have interfered with the Plaintiff's operations

PAGE16

PLEADING TITLE   PLAINTIFF'S COMPLAINT

within the National Marine Sanctuary (NMS), an area governed by the National Marine Sanctuaries Act (NMSA), codified at *16 U.S.C. § 1431 et seq.*. The Defendants' conduct was taken without Constitutional authority and infringes upon constitutionally mandated admiralty jurisdiction, making their interference inherently unlawful from the outset.

26.)   This unlawful interference specifically involved the Plaintiff's Federally Documented Commercial Fishing Vessel, MARIAN 250759, and has effectively destroyed the Plaintiff's business, resulting in the loss of significant income and business opportunities. The Defendants—California Department of Fish and Wildlife (CDFW) and the County of Marin—acted in violation of the Sherman Antitrust Act and Clayton Act, causing direct harm to the Plaintiff by engaging in unlawful anticompetitive behavior. Specifically, the Defendants' conduct constitutes violations of *Section 1 and Section 2 of the Sherman Act, codified at 15 U.S.C. §§ 1 and 2*, which prohibit restraints of trade and monopolization. The Defendants' actions restrained competition in the Commercial Fishing Industry and unlawfully interfered with the Plaintiff's ability to operate within the industry, causing direct and measurable harm to the Plaintiff's business, as well as the local consumer market. The

PAGE17

PLEADING TITLE  PLAINTIFF'S COMPLAINT

Plaintiff has also suffered damage to market share, lost revenue, lost opportunities and reputational harm, all directly resulting from the Defendants' unlawful actions.

27.) In line with the principles established in *Clayton Act Section 4 and Section 16*, the Plaintiff is entitled to recover not only actual damages but also the loss of market share, lost revenue, and reputational harm caused by the unlawful actions of the Defendants. As stated in *15 U.S.C. § 1*, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal", and *15 U.S.C. § 2* similarly prohibits monopolization. These antitrust violations by the Defendants have directly harmed the Plaintiff, with resulting damages that are recoverable under the law.

28.) As a direct consequence of the Defendants' unlawful conduct, the Plaintiff is entitled to trebled damages pursuant to the antitrust laws, which provide for the recovery of three times the amount of actual damages suffered by the Plaintiff under *15 U.S.C. § 15(a)*. In addition to lost wages, plus economic damages for five years of harm and future earning capacity, the Plaintiff seeks punitive damages for the Defendants' tortious and intentional interference with the Plaintiff's Federal

PAGE18

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Admiralty contracts under Maritime law as a Seaman, given the egregious and unlawful nature of the Defendants' actions.

## Damages and the Standard for Estimating Antitrust Loss

29.)    The Plaintiff's damages are not speculative or conjectural. While exact quantification of damages is difficult, courts have recognized that the fact-finder may make a reasonable and fair estimate of damages based on the evidence presented at trial. In *Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992)*, the Supreme Court confirmed that the "vagaries of the marketplace" often prevent exact knowledge of the plaintiff's situation absent the defendant's unlawful conduct. However, damages can and must be estimated using reasonable inferences drawn from available evidence, as established in *Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969)*.

30.)    The Defendants' unlawful conduct has disrupted the Plaintiff's ability to operate lawful business within the Commercial Fishing industry particularly in

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Federal waters governed by Federal regulations and laws of the United States. The intentional interference of Plaintiff's contracts is under the National Marine Sanctuaries Act (NMSA), codified at 16 U.S.C. § 1431 et seq., which provides for the protection and management of National Marine Sanctuaries, including specific boundaries within the Pacific Ocean. The Plaintiff's operations in this area were directly obstructed by the Defendants, who intentionally interfered with the Plaintiff's contractual relations with the Federal Government under Federal Admiralty law. This interference occurred within the exclusive Federal domain of the National Marine Sanctuary, and the Defendants' conduct restrained trade and Commerce by preventing the Plaintiff from engaging in its lawful business operations within these Federal Waters.

31.)   As a direct result of the Defendants' anticompetitive conduct, the Plaintiff has suffered actual and substantial injury, including the loss of revenue, wages, and damage to goodwill, all of which are consequential effects flowing directly from the Defendants' unlawful actions. These injuries, which continue to affect the Plaintiff's future earning capacity, are precisely the types of harm that the antitrust laws seek to prevent. The Plaintiff has not only faced economic harm but also sustained

PAGE20

PLEADING TITLE   PLAINTIFF'S COMPLAINT

reputational damage, further hindering the Plaintiff's ability to begin to recover and rebuild and expand its operations. These damages are directly traceable to the Defendants' restraint of trade and monopolization, which have disrupted competition in the Commercial Fishing Industry and adversely affected the local consumer market by restricting the Plaintiff's ability to deliver fresh product to the fish wholesalers at the dock which distribute product locally, interstate and internationally. The Supreme Court's decision in *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC* significantly strengthens the enforceability of choice-of-law provisions within Maritime contracts under Federal Maritime law. By affirming that these provisions are presumptively valid, the Court ensures greater uniformity and predictability in Maritime law, which is essential for facilitating efficient Maritime Commerce and reducing litigation complexities. The narrow delineation of exceptions preserves the integrity of Federal Maritime policies while respecting the autonomy of contractual agreements. This landmark ruling sets a robust precedent, guiding future Maritime disputes and reinforcing the foundational principles of Maritime jurisprudence. *GREAT LAKES INSURANCE SE v. RAIDERS RETREAT REALTY CO., LLC* Choice-of-law provisions in Maritime contracts are presumptively enforceable under Federal Maritime law, with narrow exceptions not applicable here. (a) Article III's grant of

PAGE21

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Federal jurisdiction to "all Cases of Admiralty and Maritime Jurisdiction," §2, cl. 1, contemplates a uniform system of Maritime law across the country, see *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd., 543 U. S. 14, 28*, to promote interests of navigation, commerce, and diplomatic relations. To maintain uniformity, Federal Courts "make decisional law" for Maritime cases, based on sources including "judicial opinions, legislation, treatises, and scholarly writings," *Air & Liquid Systems Corp. v. DeVries, 586 U. S. 446, 452*. Federal Courts follow previously "established" Maritime rules, and may create uniform maritime rules if no established rule exists. See, *e.g., Norfolk Southern, 543 U. S., (1)* Longstanding precedent in both this Court and the Courts of Appeals establishes a federal maritime rule that choice-of-law provisions in maritime contracts are presumptively enforceable. In an analogous context, the Court has pronounced that forum-selection clauses in Maritime contracts are "prima facie valid" under Federal Maritime law and "should be enforced unless" doing so would be unreasonable. *The Bremen v. Zapata Off-Shore Co., 407 U. S. 1, 10*. Like choice-of law provisions, forum-selection clauses have "the salutary effect of dispelling any confusion" on the manner for resolving future disputes, thereby slashing the "time and expense of pretrial motions." *Carnival Cruise Lines, Inc. v. Shute, 499 U. S. 585, 593–594*. The Supreme Court's decisions

PAGE22

PLEADING TITLE   PLAINTIFF'S COMPLAINT

on the enforceability of forum-selection clauses dictate the same conclusion for choice-of-law provisions. The Supreme Court granted certiorari to resolve a split in the Courts of Appeals regarding the enforceability of choice-of law provisions in maritime contracts. *Compare Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC, 47 F. 4th, at 233, with Galilea, LLC v. AGCS Marine Ins. Co., 879 F. 3d 1052, 1060 (CA9 2018); Stoot v. Fluor Drilling Servs., Inc., 851 F. 2d 1514, 1517 (CA5 1988).* Under the Constitution, Federal Courts possess authority to create and apply Maritime law. Article III of the Constitution extends the Federal judicial power to "all Cases of Admiralty and Maritime Jurisdiction."

32.)    U. S. Const., Art. III, § 2, cl. 1. That grant of jurisdiction contemplates a system of Maritime law "'coextensive with, and operating uniformly in, the whole country.'" *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd., 543 U. S. 14, 28 (2004) (quoting American Dredging Co. v. Miller, 510 U. S. 443, 451 (1994)).* The purposes of that uniform system include promoting "the great interests of navigation and commerce" and maintaining the United States' "diplomatic relations." *3 J. Story, Commentaries on the Constitution of the United States §1666, p. 533 (1st ed. 1833);*

PAGE23

PLEADING TITLE   PLAINTIFF'S COMPLAINT

*see also Norfolk Southern, 543 U. S., at 28; Exxon Corp. v. Central Gulf Lines, Inc., 500 U. S. 603, 608 (1991).*

33.)   To maintain that uniform system, Federal Courts "make decisional law" for Maritime cases. *Norfolk Southern, 543 U. S., at 23.* When a Federal Court decides a Maritime case, it acts as a "Federal common law court, much as state courts do in state common-law cases." *Air & Liquid Systems Corp. v. DeVries, 586 U. S. 446, 452 (2019) (internal quotation marks omitted); see Dutra Group v. Batterton, 588 U. S. 358, 360 (2019).* "Subject to direction from Congress," the Federal courts fashion Maritime rules based on, among other sources, "judicial opinions, legislation, treatises, and scholarly writings." *Air & Liquid Systems, 586 U. S., at 452; see also Exxon Co., U. S. A. v. Sofec, Inc., 517 U. S. 830, 839 (1996); East River S. S. Corp. v. Transamerica Delaval Inc., 476 U. S. 858, 864 (1986).* Exercising that authority, Federal Courts follow previously "established" Maritime rules.

**States Cannot "Contract Out" of Admiralty Jurisdiction**

PAGE24

PLEADING TITLE   PLAINTIFF'S COMPLAINT

34.)    The exclusive jurisdiction granted to the federal government over maritime affairs cannot be overridden by any state legislation or contractual agreement. Landmark cases such as *The Davis* (1879) and *The Lottawanna* (1874) affirm that admiralty jurisdiction is a matter of federal law and exclusive to federal courts. Federal maritime law has been structured to handle matters across the entire nation, and Congress has been granted the authority to regulate interstate and international maritime commerce under its Commerce Clause authority. The federal judiciary is bound by this constitutional framework, and when there is a conflict between state laws and federal admiralty law, the federal judiciary ensures that federal law prevails.

**The State Action Doctrine Does Not Apply**

35.)    Under the State Action Doctrine, a state can be immune from antitrust liability if it has adopted a policy that displaces competition and actively supervises its conduct. However, no such legitimate state policy exists in this case. This interference with a federal contract within a National Marine Sanctuary is not based on any legitimate state policy and exceeds the defendants' authority, particularly with respect to federal jurisdiction over matters related to marine sanctuaries. Moreover, the defendantss' actions were not part of an actively supervised policy, but rather unilateral and unconstitutional.

PAGE25

PLEADING TITLE    PLAINTIFF'S COMPLAINT

# LEGAL CLAIMS

**Count I** – Violation of *Section 1 of the Sherman Antitrust Act (15 U.S.C. §* (Restraint of Trade)

Plaintiff re-alleges and incorporates by reference the facts set forth above.

Defendants' actions, including unlawfully obstructing Federally authorized Commerce, interfering with Federal contracts, and intentionally obstructing Federal objectives, constitute an illegal restraint of trade in violation of *Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1*. Specifically, the Defendants' unlawful conduct interferes with Federally authorized operations, including Federal Maritime contracts and operations governed by Federal law, thereby hindering Plaintiff's ability to engage in interstate and International Commerce.

The Defendants' actions have unlawfully obstructed the Federal Government's ability to fulfill its contractual obligations under Federal law, including the National Marine Sanctuaries Act and relevant Admiralty laws governing U.S. Maritime

PAGE26

PLEADING TITLE   PLAINTIFF'S COMPLAINT

activities. These actions have created an undue barrier to trade, disrupting the free competition within the Commercial Fishing and Maritime Industries, and violating both the Commerce Clause and Federal preemption principles.

The actions of the Defendants not only harm the Plaintiff but also undermine the integrity of Interstate and International Maritime Commerce and the Federal Supremacy established by the Federal Constitution. By obstructing Federal contracts and interfering with Federally protected Commerce, Defendants have violated the core principles of free competition as protected under Federal antitrust laws. These unlawful actions have caused the Plaintiff to suffer substantial economic harm, including lost wages, revenue, damage to reputation, and the destruction of business operations.

**Count II** – Violation of *Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2)* (Monopolization)

Plaintiff re-alleges and incorporates by reference the facts set forth above.

PAGE27

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Defendants have engaged in actions that have monopolized or attempted to monopolize Plaintiff's ability to engage in lawful, federally authorized Fishing operations by exercising illegal control over Plaintiff's lawful Commercial Fishing operations and freedom to enter into contracts. Through discriminatory conduct, unlawful interference with federally authorized contracts, and intentional obstruction of Federal operations, Defendants have monopolized the Commercial Fishing and Maritime Industry.

By monopolizing or attempting to monopolize federally regulated Fisheries, Defendants have unlawfully restricted competition, creating an unfair and unlawful advantage for other parties within the industry. Plaintiff's ability to compete in the Fishing Industry has been directly undermined by Defendants' unlawful actions, which negatively impact consumers in local, Interstate, and International markets.

**Count III** – Violation of CLAYTON ACT Section 4 (15 U.S.C. § 15), Section 15 (15 U.S.C. § 15), Section 16 (15 U.S.C. § 16)

PAGE28

PLEADING TITLE    PLAINTIFF'S COMPLAINT

(Treble Damages for Antitrust Violations)

Plaintiff re-alleges and incorporates by reference the facts set forth above.

Under the CLAYTON ACT Section 4 (15 U.S.C. § 15), Section 15 (15 U.S.C. § 15), Section 16 (15 U.S.C. § 16)

Plaintiff is entitled to treble damages as a result of Defendants' unlawful antitrust violations. Defendants' interference with Plaintiff's federally authorized Commercial Fishing operations has caused Plaintiff to suffer substantial economic harm. The violation of the Sherman Antitrust Act, through both restraint of trade and monopolization, has significantly impacted Plaintiff's business operations, resulting in lost income, reputational damage, and the intentional interference with Plaintiff's Federal Admiralty contracts.

Plaintiff requests that the Court award treble damages for the harm caused by Defendants' unlawful conduct, pursuant to the provisions of the Clayton Act, to make Plaintiff whole and to deter future violations of Federal antitrust law.

**Count IV** – Tortious Intentional Interference with an Admiralty Contract

Plaintiff re-alleges and incorporates by reference the facts set forth above.

PAGE29

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Defendants have intentionally and unlawfully interfered with Plaintiff's federally authorized Admiralty contracts, which are governed by Admiralty law. By enacting conflicting state regulations that unlawfully impede Plaintiff's ability to operate and obstruct the Federal Government from fulfilling its constitutional duties under Federal contracts, the Defendants have intentionally interfered with Plaintiff's business relationships and contractual obligations. This interference is unjustifiable and was carried out with malicious intent to harm Plaintiff's ability to operate within Federal Waters, effectively destroying Plaintiff's Commercial Fishing business, which impacts consumers in local markets.

Plaintiff's damages, resulting from Defendants' actions, include lost income, reputational damage, and the disruption of Federally authorized operations, as well as other related harm.

WHY THIS COURT MUST INTERVENE

The actions of Defendants are in direct violation of Federal antitrust laws, Maritime law, and Constitutional principles of Federal Supremacy. This Court has exclusive

PAGE30

PLEADING TITLE   PLAINTIFF'S COMPLAINT

jurisdiction to adjudicate this matter pursuant to *28 U.S.C. § 1331*, as this case arises under the laws of the United States, specifically Federal antitrust law, Maritime law, and the Commerce Clause of the U.S. Constitution.

The Defendants' actions that have intentionally interfered with Federally regulated Commerce and violated Federal Constitutional obligations cannot be shielded by any form of immunity. As the U.S. Supreme Court has held, the Federal judiciary has the duty to ensure that Federal law is upheld and to prevent Defendants' interference with Federal obligations. State immunity does not apply to the intentional violations of Federal law by Defendants, as these actions are in direct violation of Constitutional principles and Federal regulations.

The *Atlantic Transport Co. v. Imbrovek* case emphasizes that state laws cannot interfere with Federal Maritime law and must yield to Federal authority to maintain consistency in Interstate and International Maritime Commerce.

PAGE31

PLEADING TITLE    PLAINTIFF'S COMPLAINT

REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that Defendants' actions constitute violations of Section 1 and Section 2 of the Sherman Antitrust Act, unlawful interference with Federal contracts, and violations of Federal law governing Interstate and International Commerce.

2. Award compensatory damages in the exact amount to be determined at trial, representing the economic harm suffered by Plaintiff due to Defendants' unlawful actions, including lost revenue, damage to reputation, and business destruction.

3. Award treble damages for the antitrust violations under Section 4 of the *Clayton Act (15 U.S.C. § 15)*, to be calculated in accordance with the provisions of the statute, in order to compensate Plaintiff for the full extent of

PAGE32

PLEADING TITLE   PLAINTIFF'S COMPLAINT

the harm caused by Defendants' actions and to serve as a deterrent against future violations.

4. Issue a permanent injunction to prevent Defendants from continuing to unlawfully interfere with Plaintiff's federally authorized operations and obstruct the Federal Government's contractual obligations, including but not limited to blocking Plaintiff's ability to operate in Federal Maritime Waters and engage in lawful Commercial Fishing operations.

5. Award punitive damages for Defendants' wanton, egregious, fraudulent, and malicious conduct aimed at destroying Plaintiff's business operations, and to further punish Defendants for their intentional interference with Federal law and Federal contracts.

6. Award Plaintiff reasonable attorneys' fees and the costs associated with bringing this action, in accordance with applicable law, as Plaintiff has been forced to incur significant legal expenses due to Defendants' unlawful conduct.

PLEADING TITLE   PLAINTIFF'S COMPLAINT

7. Grant any other relief that the Court deems just, proper, and equitable to make Plaintiff whole, including restitution, corrective actions, and any measures necessary to ensure compliance with Federal law and restore Plaintiff's rightful position in the Fishing Industry.

PLEADING TITLE   PLAINTIFF'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Assertion of Damages for Antitrust Violations

Plaintiff respectfully asserts that as a result of the Defendants' unlawful conduct, including antitrust violations, intentional interference with federally authorized contracts, and destruction of Plaintiff's business, Plaintiff has suffered substantial economic harm. This harm includes lost wages, future earnings, damage to reputation, loss of goodwill, and the destruction of Plaintiff's business as a going concern.

The calculations outlined below are based on standard methods for measuring lost wages and future earnings, as well as for valuing the destruction of a business and its

PAGE35

PLEADING TITLE   PLAINTIFF'S COMPLAINT

goodwill. Plaintiff will provide supporting legal documentation to verify these claims, which include 1099 forms, receipts from market wholesalers, and other legally sufficient documents that substantiate the Plaintiff's claims.

These calculations are further supported by established case law, including but not limited to the U.S. Supreme Court's approach in *Atlantic Transport Co. v. Imbrovek*, and other relevant precedents that allow for the recovery of damages caused by antitrust violations under the Sherman Antitrust Act, as well as the ability to recover damages for the destruction of a business under Admiralty law principles.

Step 1: Weekly Net Profit

Plaintiff's weekly net profit from federally authorized Commercial Fishing operations is Five Thousand dollars ($5,000).

Weekly Net Profit: $5,000

Step 2: Lost Wages for 2 Years

Based on Plaintiff's weekly earnings, the total lost wages for two years are calculated as follows:

PAGE36

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Weeks in 2 Years: 52 weeks/year × 2 years = 104 weeks

Lost Wages for 2 Years: $5,000/week × 104 weeks = $520,000

Step 3: Future Earnings for 5 Years

For future earnings, assuming continued profitability, Plaintiff projects earnings over the next five years:

Weeks in 5 Years: 52 weeks/year × 5 years = 260 weeks

Future Earnings for 5 Years: $5,000/week × 260 weeks = $1,300,000

Step 4: Incorporating Loss of Goodwill and Going Concern Value

The destruction of Plaintiff's business is further supported by the loss of goodwill and the "going concern" value of the business. These calculations reflect the lost value of Plaintiff's business, including long-term client relationships, the ability to continue operating under federally authorized contracts, and Plaintiff's standing within the Commercial Fishing Industry.

PAGE37

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Loss of Goodwill: Based on industry standards, the reputational harm caused by the Defendants' unlawful actions is estimated at Two-Hundred and Fifty Thousand ($250,000).

Going Concern Value (Business Destruction): The destruction of Plaintiff's business as a result of the antitrust violations, including the loss of contracts, market access, and the ability to continue operations in federally regulated Maritime waters, is estimated at Five Hundred Thousand dollars ($500,000).

Step 5: Total Calculation of Damages

Combining the lost wages, future earnings, goodwill loss, and going concern value, the total amount of damages is calculated as follows:

Lost Wages (2 Years): $520,000

Future Earnings (5 Years): $1,300,000

Loss of Goodwill: $250,000

Going Concern Value (Business Destruction): $500,000

Total Damages = $520,000 (Lost Wages) + $1,300,000 (Future Earnings) + $250,000 (Goodwill Loss) + $500,000 (Business Destruction) = $2,570,000

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Supporting Legal Documentation

Plaintiff will provide supporting documents to verify and substantiate these claims, including:

1099 Forms for proof of earnings.

Fish and Game Unload Receipts from market wholesalers to document earnings per fishing operation.

Tax Returns and Profit and Loss Statements for previous years, showing consistent profitability prior to the Defendants' unlawful actions.

Contracts and Business Records that demonstrate Plaintiff's longstanding business operations and the impact of the destruction of these relationships.

Additionally, case law supports the calculation of damages for the destruction of a business as a result of antitrust violations, as illustrated in various antitrust cases, including Atlantic Transport Co. v. Imbrovek, where courts have allowed for recovery of both lost profits and going concern value when a business is destroyed by unlawful conduct.

Final Total Damage Amount

PLEADING TITLE   PLAINTIFF'S COMPLAINT

Based on the calculations outlined above and the supporting legal documentation to be provided, Plaintiff respectfully requests the Court to award a total of $2,570,000 in damages for the harm caused by the Defendants' unlawful actions, which includes:

$520,000 for lost wages (2 years).

$1,300,000 for future earnings (5 years).

$250,000 for the loss of goodwill.

$500,000 for the going concern value (destruction of the business).

This sum reflects the total damages Plaintiff has incurred as a direct result of the Defendants' antitrust violations and interference with Plaintiff's federally authorized operations, as supported by the legal standards and case law regarding antitrust damages. DOCUMENTS TO BE PRESENTED AT TRIAL OR UPON REQUEST OF THE COURT.

PLEADING TITLE   PLAINTIFF'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Punitive Damages Request in Accordance with *BMW of North America, Inc. v. Gore*. Plaintiff respectfully requests that the Court award punitive damages in accordance with the guidelines set forth by the U.S. Supreme Court in *BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996)*, which provides a framework for determining the appropriate level of punitive damages.

**Legal Basis for Punitive Damages:**

In the *BMW of North America, Inc. v. Gore* case, the U.S. Supreme Court established a critical 9:1 ratio guideline for punitive damages, holding that punitive damages should generally not exceed nine times the amount of compensatory damages unless justified by exceptional circumstances. The Court emphasized the need for punitive damages to reflect the reprehensibility of the defendant's conduct, the ratio of punitive to compensatory damages, and the comparability of civil penalties available for the unlawful actions involved.

The *BMW of North America, Inc. v. Gore* case provides that punitive damages are appropriate when the defendant's conduct is found to be particularly egregious,

PAGE41

PLEADING TITLE   PLAINTIFF'S COMPLAINT

fraudulent, or malicious, and when it undermines the rights of the plaintiff in a manner that justifies deterrence. The Court specifically noted that punitive damages should serve to punish defendants for their willful misconduct and prevent similar future conduct.

**Application to the Current Case:**

Plaintiff's claims involve the intentional obstruction of federally authorized admiralty contracts that directly resulted in the destruction of Plaintiff's Commercial Fishing business. Defendants have engaged in actions that are not only unconstitutional but also malicious and deliberate in their interference with federally protected operations, which violates the Supremacy Clause of the U.S. Constitution and Federal Maritime law. Specifically, Defendants have intentionally undermined the Plaintiff's federally authorized operations, obstructed the fulfillment of admiralty contracts, and caused substantial economic harm to Plaintiff's business, reputation, and future earnings. As such, Plaintiff requests that the Court apply the reasoning in *BMW of North America, Inc. v. Gore* in determining the amount of punitive damages.

**Punitive Damages Request Based on BMW v. Gore:**

PAGE42

PLEADING TITLE   PLAINTIFF'S COMPLAINT

In light of the *BMW of North America, Inc. v. Gore* decision, Plaintiff respectfully requests the Court to award punitive damages in an amount not exceeding nine times the amount of compensatory damages as calculated in the previous sections of this Complaint. The compensatory damages for lost wages, lost future earnings, loss of goodwill, and destruction of the business have been quantified as Two million five hundred seventy thousand dollars ($2,570,000). Based on the 9:1 ratio from *BMW of North America, Inc. v. Gore*, the Plaintiff seeks punitive damages in the amount of Twenty-Three Million, One Hundred Thirty Thousand ($23,130,000).

**Factors Supporting the Request for Punitive Damages:**

**Reprehensibility of Defendants' Conduct:** The Defendants' actions go beyond simple negligence or mistakes. They reflect a deliberate and malicious intent to obstruct Plaintiff's federally authorized Fishing operations and unlawfully interfere with Plaintiff's contractual rights under Federal law. This conduct is particularly egregious because it undermines the exclusive jurisdiction of Federal Admiralty law and directly harms the Federal Government's enforcement of Maritime contracts.

PAGE43

PLEADING TITLE   PLAINTIFF'S COMPLAINT

**Ratio of Punitive to Compensatory Damages:** Following the *BMW of North America, Inc. v. Gore* precedent, the Court is encouraged to use a 9:1 ratio in determining punitive damages. Given that Plaintiff has suffered Two million five hundred seventy thousand dollars ($2,570,000) in compensatory damages, an award of Twenty-Three Million, One Hundred Thirty Thousand ($23,130,000) in punitive damages is justified by the malicious, fraudulent, and unconstitutional nature of Defendants' actions.

**Deterrence and Prevention of Future Violations:** The imposition of punitive damages is critical in ensuring that Defendants, and other entities, are deterred from engaging in similar unlawful conduct that undermines the authority of federal contracts and harms businesses in the maritime industry. These violations, if left unchecked, could lead to widespread damage to the Maritime Industry, which is governed by Federal law and should be protected from unjust state interference.

**Lack of Justification for Defendants' Actions:** Defendants have failed to provide any legitimate justification for their actions. The interference with Plaintiff's business was not a mere consequence of regulatory actions or inadvertent mistakes but rather

PAGE44

PLEADING TITLE   PLAINTIFF'S COMPLAINT

an intentional attempt to disrupt Plaintiff's ability to operate within federally regulated Maritime waters, thus destroying a vital commercial enterprise.

**Conclusion:**

In light of the intentional, Malicious, and unconstitutional obstruction of Plaintiff's federally authorized Admiralty contracts and the resulting destruction of Plaintiff's business, Plaintiff requests the Court to award punitive damages in the amount of Twenty-Three Million, One Hundred Thirty Thousand ($23,130,000). This amount is based on the 9:1 ratio as set forth by the U.S. Supreme Court in *BMW of North America, Inc. v. Gore* and reflects the seriousness of Defendants' actions. Such an award will serve not only to punish Defendants for their egregious misconduct but also to deter similar actions in the future, thereby upholding the integrity of Federal Admiralty law and protecting businesses engaged in federally regulated commercial activities. Federalist Papers and Maritime Trade: Federalist No. 44, Federalist No. 12, and Federalist No. 64 emphasize the necessity of a strong federal government to regulate areas such as interstate commerce, including maritime trade. The Founders understood that federal regulation of maritime activities was essential to ensure a unified and efficient national economy, especially given the critical role that maritime

PLEADING TITLE   PLAINTIFF'S COMPLAINT

trade played in the early economy of the United States. These Federalist Papers outline the broader principles of federal power and the creation of a federal system capable of regulating commerce, which would include maritime commerce. They highlight the importance of commerce between states and international trade, both of which are inherently linked to federal jurisdiction, especially on navigable waters. The Act of September 1, 1789 (First Congress): The Act of September 1, 1789 (ch. 11, § 1, 1 Stat. 55) early law passed by the First Congress to establish federal certification for vessels. This was a foundational piece of legislation in the development of a federal maritime system and set the stage for later laws governing maritime trade and the regulation of vessels. Federal certification allowed vessels engaged in interstate or international trade to receive benefits granted by federal laws. This law laid the groundwork for the federal government's role in regulating vessels and promoting commerce and navigation on U.S. waters.

Respectfully submitted,...

Date 1/13/2025, Signature_____ PATRICK ROY HARPER

1/22/2025

PAGE46

PLEADING TITLE   PLAINTIFF'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAGE47

PLEADING TITLE   PLAINTIFF'S COMPLAINT

**ATTACHMENT A**

DEPARTMENT OF HOMELAND SECURITY
U.S. Coast Guard
**NOTICE OF FEDERAL INTEREST**

Mr. Patrick Harper

6690 Bloomfield Road

Petaluma, CA 94952

Date: 9/14/21

**This letter is to make you aware of your ongoing obligations under the law.
This is not a penalty or admission of responsibility.**

On or about  0830 14SEP2021  , a pollution incident occurred or threatens to occur at:

Tomales Bay, California                                                                                 a

United States navigable waterway. The United States Government has identified you as a potential responsible party. This pollution incident involves a potential or actual discharge of oil, a release of hazardous substance, and/or hazardous material, which triggers certain responsibilities under the applicable Federal Statutes, marked below:

[✓] The Federal Water Pollution Control Act (Clean Water Act (CWA)), 33 U.S.C. § 1321.

[ ] The Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C. § 9604-9607.

As a potential responsible party, you may be financially liable for this incident and are required to carry out immediate and effective removal and/or remediation actions.

If your removal or remediation actions are inadequate as determined by the Federal On-Scene Coordinator (FOSC) or their representative, the United States Government may issue an administrative order, assume the response, or take other actions necessary to minimize or mitigate damage to the public health or welfare. As such, you may be liable for removal sts incurred by the United States Government beyond any damages resulting from this incident.

If you are directed by the FOSC through an administrative order, and fail to comply, you may be subject to civil penalties. Under the CWA, failure to properly carry out removal or comply with an administrative order may result in a penalty of up to  $48,192.00  per day or up to three times the costs incurred by the Oil Spill Liability Trust Fund. Under CERCLA, failure to take removal or remedial action may result in a fine up to  $ 58,328.00  per day and punitive damages not to exceed three times the cost incurred by the Hazardous Substance Superfund.

While your cooperation will be considered, fulfillment of your response obligations does not preclude the United States Government from taking enforcement actions including referral to the Department of Justice. Your signature below acknowledges this service of notice to the owner, operator, or person in charge. If you have any questions regarding this notice, please contact:  MST2 Ambro  at  510-697-9664

Respectfully,

| U.S. Coast Guard Representative (Print) | Signature | Date mm/dd/yyyy | Time HH:MM |
|---|---|---|---|
| MST3 Cameron Simington | | 14 SEP 2 | 1223 |
| Owner/Operator Representative (Print) | Signature | Date mm/dd/yyyy | Time HH:MM |
| | | | |

| Witness (Print) | Signature | Date mm/dd/yyyy | Time HH:MM |
|---|---|---|---|
| MST1 Chris Brandshagen | | 14 SEP 2021 | 1234 |

CG-5549 (07/17)

**ATTACHMENT B**

Original Copy

# UNITED STATES DEPARTMENT OF COMMERCE
## NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION

### Waiver of Claim to And Abandonment of Item    CCN:

I, Patrick Ray Harper , do hereby waive all claim to and voluntarily abandon and forfeit to the United States Department of Commerce, National Oceanic and Atmospheric Administration, all right, title, and interest in the following items(s), to wit:  the 2-ft motor vessel Marian (CA USCG DMV registration # 250759) (including its fishing gear, furniture, appurtenances, stores, cargo, and all other contents) which was allegedly discharged into the Greater Farallones National Marine Sanctuary on Sept 15 2021 at Petaluma .CA , in violation of the following statute:

[  ] Maguson-Stevens Fishery Conservation and Management Act, 16 U.S.C. 1801-1882,

[  ] Marine Mammal Protection Act, 16 U.S.C. 1361-1407,

[  ] Endangered Species Act, 16 U.S.C. 1531-1543.

[  ] Lacey Act Amendments of 1981, 16 U.S.C 3371-3378,

[ X ] National Marine Sanctuaries Act, 16 U.S.C. 1431,

and implementing regulations at 15 C.F.R. 922.82

I make this waiver of claim and so forfeit and abandon the stated item(s) voluntarily and with full knowledge of my right to otherwise contest the alleged violation and any penalty, seizure, forfeiture or other sanction that might be sought by the United States.  I agree not to assert against the United States, or any salvor contracted by the United States in this matter, any claims or counterclaims whatsoever arising out of the salvage, seizure, detention or forfeiture of the item(s) described above.

**ATTACHMENT C**



MARIN COUNTY
SUPERIOR COURT
COUNTY OF MARIN -
ePORTAL

**CR218168A**
People vs. PATRICK ROY HARPER
Criminal/Traffic

<u>Case</u>    <u>Filings</u>    <u>Parties</u>    <u>Documents</u>    <u>Events</u>    <u>Case Transfer</u>

**Documents**

🗐 Documents

| Filed | Description | Filed By |
|---|---|---|
| | CR218168A : People vs. PATRICK ROY HARPER | |
| 09/12/2023 | Order - Appointing Counsel | Clerk |
| 09/06/2023 | Victim Restitution - Paid in Full | Probation |
| 08/30/2023 | Appeals - Request for Counsel | Defendant |
| 08/30/2023 | Appeals - Notice of Filing Appeal | Clerk |
| 08/28/2023 | Appeals - Notice | Defendant |
| 08/28/2023 | Appeals - Notice Regarding Record | Defendant |
| 08/17/2023 | Proof - Documents provided by defendant to court during 08/17/23 session. | Defendant |
| 07/19/2023 | Order Writ of Habeas Corpus | Clerk |
| 07/13/2023 | Writ Writ of Habeas Corpus | Defendant |
| 06/21/2023 | Petition for Revocation - Probation (People's Notice of Motion For Continuance of Hearing on) | Clerk |
| 06/21/2023 | Declaration OF Deputy District Attorney Daniel L. Madow | Clerk |
| 06/05/2023 | Minute Order (OnBase) | CONV |
| 05/08/2023 | Minute Order (OnBase) | CONV |
| 05/01/2023 | Request (OnBase) | CONV |
| 04/24/2023 | Petition (OnBase) | CONV |
| 04/19/2023 | Petition | Probation |
| 02/21/2023 | Order (OnBase) | CONV |

| Filed | Description | Filed By |
|---|---|---|
| 01/13/2023 | Waiver (OnBase) | CONV |
| 01/13/2023 | Minute Order (OnBase) | CONV |
| 01/13/2023 | Memorandum (OnBase) | CONV |
| 01/09/2023 | Minute Order (OnBase) | CONV |
| 12/20/2022 | Exhibit List (OnBase) | CONV |
| 12/20/2022 | Order (OnBase) | CONV |
| 12/20/2022 | Witness List (OnBase) | CONV |
| 12/20/2022 | Jury Instructions (OnBase) | CONV |
| 12/20/2022 | Minute Order (OnBase) | CONV |
| 12/19/2022 | Document - Other (OnBase) | CONV |
| 12/19/2022 | Minute Order (OnBase) | CONV |
| 12/19/2022 | Minute Order (OnBase) | CONV |
| 12/19/2022 | Document - Other Confidential (OnBase)  Confidential as of 12/19/2022 | CONV |
| 12/19/2022 | Document - Other Confidential (OnBase)  Confidential as of 12/19/2022 | CONV |
| 12/19/2022 | Document - Other Confidential (OnBase)  Confidential as of 12/19/2022 | CONV |
| 12/16/2022 | Motion (OnBase) | CONV |
| 12/16/2022 | Minute Order (OnBase) | CONV |
| 12/16/2022 | Motion (OnBase) | CONV |
| 12/15/2022 | Motion (OnBase) | CONV |
| 12/15/2022 | Jury Instructions (OnBase)  Confidential as of 12/15/2022 | CONV |
| 12/15/2022 | Motion (OnBase) | CONV |
| 12/14/2022 | Minute Order (OnBase) | CONV |
| 11/30/2022 | Minute Order (OnBase) | CONV |
| 11/21/2022 | Order (OnBase) | CONV |
| 11/21/2022 | Minute Order (OnBase) | CONV |
| 03/25/2022 | Minute Order (OnBase) | CONV |
| 03/25/2022 | Warrant (OnBase) | CONV |
| 03/04/2022 | Warrant (OnBase) | CONV |

| Filed | Description | Filed By |
|---|---|---|
| 03/03/2022 | Minute Order (OnBase) | CONV |
| 01/31/2022 | Citation (OnBase) | CONV |
| Confidential as of 01/31/2022 | | |
| 12/21/2021 | Warrant (OnBase) | CONV |
| 12/21/2021 | Minute Order (OnBase) | CONV |
| 12/20/2021 | Minute Order (OnBase) | CONV |
| 12/16/2021 | Complaint (OnBase) | CONV |
| 09/14/2021 | Citation (OnBase) | CONV |
| Confidential as of 09/14/2021 | | |

Copyright © Journal Technologies, USA. All rights reserved.

ATTACHMENT D



DHS, USCG, CG-1270 (REV. 06-04)

OMB APPROVED
1625-0027

# UNITED STATES OF AMERICA

## DEPARTMENT OF HOMELAND SECURITY
## UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

# CERTIFICATE OF DOCUMENTATION

| VESSEL NAME MARIAN | OFFICIAL NUMBER 250759 | IMO OR OTHER NUMBER NONE | YEAR COMPLETED 1946 |
|---|---|---|---|
| HAILING PORT FORT BRAGG CA | HULL MATERIAL WOOD | | MECHANICAL PROPULSION YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 9 GRT | 6 NRT | 33.2 | 10.6 | 4.2 |

PLACE BUILT

FORT BRAGG CA

| OWNERS PATRICK ROY HARPER | OPERATIONAL ENDORSEMENTS FISHERY |
|---|---|

MANAGING OWNER
PATRICK ROY HARPER

National Vessel Documentation Center USCG
I hereby certify this to be a true copy
of the records of this office.

*Christian H. Walker*  07/23/2019

Director, National Vessel Documentation Center

RESTRICTIONS
NONE

ENTITLEMENTS
NONE

REMARKS
NONE

ISSUE DATE
FEBRUARY 28, 2018

THIS CERTIFICATE EXPIRES

FEBRUARY 28, 2019

*Christian H. Walker*

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

PREVIOUS EDITION OBSOLETE, THIS CERTIFICATE MAY NOT BE ALTERED

ATTACHMENT E



ATTACHMENT F



# Federal Communications Commission
## Wireless Telecommunications Bureau

### RADIO STATION AUTHORIZATION

LICENSEE: HARPER, PATRICK R

ATTN: PATRICK HARPER F/V MARIAN
HARPER, PATRICK R
6690 BLOOMFIELD RD
PETALUMA, CA 94952

**FCC Registration Number (FRN):** 0025036104

| Radio Service | Official Ship Number | Ship Name |
|---|---|---|
| SA - Ship Recreational or Voluntarily | 250759 | Marian |

| FCC Call Sign | File Number | Type of License | Number in Fleet |
|---|---|---|---|
| WDI5056 | 0007040939 | Regular | |

| Radio Req/Category | INMARSAT No. | Station Identity/MMSI | Selective Calling No. |
|---|---|---|---|
| | | 367704720 | |

| Grant Date | Effective Date | Expiration Date | Print Date |
|---|---|---|---|
| 11-26-2015 | 11-26-2015 | 11-26-2025 | 11-26-2015 |

Frequencies contained in 47 C.F.R. Part 80 Subpart H including, but not limited to any of the following: VHF Radiotelephone, SSB MF/HF Radiotelephone, Radar, All EPIRBs, Radiotelegraph, NB-DP/SITOR, Satellite, Facsimile, and On-Board.

**Waivers/Conditions:**
NONE

### THIS AUTHORIZATION IS NOT TRANSFERABLE

**Conditions:**
Pursuant to §309(h) of the Communications Act of 1934, as amended, 47 U.S.C. §309(h), this license is subject to the following conditions: This license shall not vest in the licensee any right to operate the station nor any right in the use of the frequencies designated in the license beyond the term thereof nor in any other manner than authorized herein. Neither the license nor the right granted thereunder shall be assigned or otherwise transferred in violation of the Communications Act of 1934, as amended. See 47 U.S.C. § 310(d). This license is subject in terms to the right of use or control conferred by §706 of the Communications Act of 1934, as amended. See 47 U.S.C. §606.

Page 1 of 1

FCC 605-S